No. 3--09--0248

Filed September 7, 2010

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2010

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 08--CF--1011 |
| DEANDRA SNYDER, | ) ) | Honorable Stuart P. Borden |
| Defendant-Appellant. | ) | Judge Presiding |

JUSTICE LYTTON delivered the opinion of the court:

Defendant, Deandra Snyder, pled guilty to intimidation (720 ILCS 5/12-6(a)(1) (West 2008)) and criminal damage to property (720 ILCS 5/21-1(1)(a) (West 2008)), pursuant to a partially negotiated guilty plea. The court sentenced defendant to concurrent prison terms of 10 and 6 years, respectively, and ordered her to pay $2,891 in restitution. On appeal, defendant argues that (1) the court erred in imposing extended-term sentences on both convictions; (2) her sentence was excessive; (3) the court should not have ordered her sentences to be served consecutively to any punishment she received for a parole violation in an unrelated case; and (4) the court failed to admonish her about the possibility of restitution. We affirm in part as modified and vacate in part.

BACKGROUND

On August 20, 2008, defendant arrived at the apartment of Corey Simmons' mother. Defendant and Simmons were dating, and defendant was pregnant with Simmons' child. Upon her arrival, defendant noticed a parked car belonging to Jessica King, Simmons' former paramour. Defendant retrieved a knife from her vehicle and repeatedly stabbed the convertible top of King's car. Simmons and King came out of the apartment and confronted defendant. Defendant began yelling and swinging her knife at them. After a while, defendant got in her vehicle and left. Defendant caused $2,891.20 in damage to King's vehicle.

Defendant had had several altercations with King in the past, including an incident when she set fire to King's car. At the time of the August 20, 2008, incident, defendant was on mandatory supervised release (MSR) and probation. In addition, defendant was previously ordered to have no contact with King or Simmons.

In connection with the August 20, 2008, incident, defendant was charged with armed violence (720 ILCS 5/33A-2(a) (West 2008)), two counts of attempted first degree murder (720 ILCS 5/8-4(a), 9-1 (West 2008)), unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2008)), intimidation (720 ILCS 5/12-6(a)(1) (West 2008)), and criminal damage to property (720 ILCS 5/21-1(1)(a) (West 2008)). On November 18, 2008, defense counsel notified the court that the State and defendant had reached a partially negotiated plea agreement. Defendant agreed to plead guilty to intimidation and criminal damage to property in exchange for the

2

State's agreement to dismiss the remaining charges. There was no agreement on sentencing. Defense counsel agreed that all sentencing options would be available to the court.

Before accepting defendant's guilty plea, the trial court informed defendant that she was facing a minimum of probation on the intimidation and criminal damage to property charges. At maximum, she was facing extended terms of between 2 and 10 years of imprisonment for intimidation and 1 and 6 years of imprisonment for criminal damage to property, followed by a 1-year period of MSR. The court did not inform defendant that she may be ordered to pay restitution.

At the sentencing hearing, the court stated that it considered aggravating and mitigating factors in imposing its sentence on defendant. The aggravating factors included defendant's prior history of criminal activity and that defendant committed the offenses when she was on probation and MSR. The court also emphasized the need to deter others from committing the same or similar offenses. In mitigation, the court noted that defendant had a newborn child and that there was some culpability by King and Simmons, who are involved in a "love triangle" with defendant. The court further found that defendant is "a very dangerous person" with "serious mental issues and anger management issues she needs to come to grips with."

After considering the presentence report, arguments of counsel, evidence in mitigation and aggravation, and defendant's statement in allocution, the trial court sentenced defendant to

3

concurrent extended-term prison sentences of 10 years for intimidation and 6 years for criminal damage to property. The court also ordered the sentences to be served consecutive to any penalty or sentence she would receive for violating her MSR in a separate case. The court also ordered defendant to pay $2,891 in restitution. Defendant filed a posttrial motion to reconsider sentence, which the court denied.

ANALYSIS

I

First, defendant argues, and the State concedes, that the trial court erred in imposing extended-term sentences on both of defendant's convictions.

Section 5-8-2(a) of the Unified Code of Corrections (Unified Code) authorizes the trial court to impose an extended term of imprisonment only on the offense within the most serious class. 730 ILCS 5/5-8-2(a) (West 2008); People v. Jordan, 103 Ill. 2d 192, 206, 469 N.E.2d 569, 575 (1984).

Here, defendant was convicted of intimidation, a Class 3 felony (720 ILCS 5/12-6(b) (West 2008)), and criminal damage to property, a Class 4 felony (720 ILCS 5/21-1(2) (West 2008)). Intimidation was the most serious offense. Thus, the trial court could only impose an extended-term sentence on the intimidation conviction. See 730 ILCS 5/5-8-2(a) (West 2008). We vacate the extended-term portion of defendant's criminal damage to property sentence, thereby reducing the sentence to three years. See 730 ILCS 5/5-8-1(a)(7) (West 2008).

4

II

Next, defendant argues that her prison sentence was excessive.

A trial court has broad discretionary powers in sentencing. People v. Stacey, 193 Ill. 2d 203, 209, 737 N.E.2d 626, 629 (2000). The trial court is granted such deference because it is in the best position to determine a sentence that balances the need to protect society with the rehabilitation of the defendant. People v. Spencer, 303 Ill. App. 3d 861, 871, 709 N.E.2d 687, 694 (1999). When sentencing a defendant, the trial court must carefully weigh both the mitigating and aggravating factors to reach a fair and just result, based on the particular circumstances of the offense and the defendant. Spencer, 303 Ill. App. 3d at 871, 709 N.E.2d at 694. A sentence within the statutory range will not be deemed excessive unless it varies greatly with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. Spencer, 303 Ill. App. 3d at 871, 709 N.E.2d at 694.

We will not disturb the court's sentencing decision absent an abuse of discretion. People v. Streit, 142 Ill. 2d 13, 19, 566 N.E.2d 1351, 1353 (1991). "An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." People v. Caffey, 205 Ill. 2d 52, 89, 792 N.E.2d 1163, 1188 (2001).

Here, the trial court properly considered the presentence report, defendant's statement, the arguments of counsel and aggravating and mitigating factors in determining defendant's

5

sentence. The court noted factors in aggravation, including defendant's significant criminal history and that she was on MSR and probation when she committed the instant offenses. The court found that defendant was a dangerous person with serious mental and anger management issues. The court also discussed mitigating factors, including defendant's newborn child and defendant's involvement in a "love triangle."

Other than the extended-term sentence issue corrected above, we find that the trial court did not abuse its discretion in sentencing defendant. Considering the significant aggravating factors in this case, prison sentences of 10 years for intimidation and 3 years for criminal damage to property are not excessive.

### III

Additionally, defendant argues that the court erred when it ordered her sentences in this case to be served consecutive to any punishment handed out for an MSR violation in an unrelated case.

"A court may order a sentence to run consecutive to any prior convictions, even where sentencing on those convictions has not yet occurred but is anticipated in an upcoming parole revocation proceeding." People v. Byrd, 285 Ill. App. 3d 641, 652, 673 N.E.2d 1071, 1078 (1996). This is precisely what occurred in this case. Thus, we hold that the court did not err when it ordered defendant's sentences to be served consecutively to any punishment handed out for an MSR violation in an unrelated case.

### IV

Finally, defendant argues that the trial court erred when it

6

failed to admonish her about the possibility of paying restitution.

Supreme Court Rule 402 requires the trial court to give certain admonishments to a defendant before accepting a guilty plea, including "the minimum and maximum sentence prescribed by law." 177 Ill. 2d R. 402(a)(2). The purpose of Rule 402 admonishments is to ensure that a defendant's guilty plea is intelligently and voluntarily made. 177 Ill. 2d R. 402, Committee Comments.

A trial court's failure to admonish a defendant regarding the possibility of restitution is a violation of Supreme Court Rule 402(a)(2). People v. Petero, 384 Ill. App. 3d 594, 598, 892 N.E.2d 1086, 1090-91 (2008); People v. Thompson, 375 Ill. App. 3d 488, 493, 874 N.E.2d 572, 576 (2007). A trial court's violation of Rule 402 is reversible error where a defendant receives a more onerous sentence than she was told she would receive. See Petero, 384 Ill. App. 3d at 599, 892 N.E.2d at 1091; Thompson, 375 Ill. 3d at 494, 874 N.E.2d at 577. The proper remedy for such an error is to vacate the restitution award. See People v. Jenkins, 141 Ill. App. 3d 602, 490 N.E.2d 953 (1986).

In Jenkins, the defendant argued that his guilty plea should be vacated because he was ordered to pay restitution but had not been admonished about restitution. The Fourth District concluded that "the restitution order exceeded the 'maximum sentence' of which the defendant had been admonished upon entry of his guilty plea." Jenkins, 141 Ill. App. 3d at 609, 490 N.E.2d at 958. Thus, the court vacated the defendant's restitution order, making the

7

defendant's sentence "within the limits stated to him prior to entry of the plea." Jenkins, 141 Ill. App. 3d at 609, 490 N.E.2d at 958.

The Jenkins approach has been adopted by our supreme court. The court has held that when a defendant pleads guilty and receives a sentence in excess of the trial court's admonishments, there are two possible remedies: (1) either the promise must be fulfilled, or (2) defendant must be given the opportunity to withdraw his guilty plea. People v. Whitfield, 217 Ill. 2d 177, 202, 840 N.E.2d 658, 673 (2005); see also People v. Morris, 236 Ill. 2d 345, 358, 925 N.E.2d 1069, 1077 (2010) (citing Whitfield). Courts of appeal will modify and reduce a defendant's sentence that does not comport with a trial court's admonishments. See Whitfield, 217 Ill. 2d at 205, 840 N.E.2d at 675 (reducing defendant's sentence of imprisonment by three years because the defendant was not admonished regarding the three-year term of mandatory supervised release that would follow his prison sentence); People v. Gulley, 383 Ill. App. 3d 727, 891 N.E.2d 441 (2008) (same); People v. Company, 376 Ill. App. 3d 846, 876 N.E.2d 1055 (2007) (same); People v. Welch, 376 Ill. App. 3d 705, 877 N.E.2d 134 (2007) (same).

Here, the trial court never admonished defendant that she could be required to pay restitution but, nevertheless, ordered her to pay it. The court's order made defendant's sentence more onerous than the court's admonishments indicated it would be. The

8

appropriate remedy is to vacate the restitution award.[1]  See Jenkins, 141 Ill. App. 3d at 609, 490 N.E.2d at 958.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed in part as modified and vacated in part.

Affirmed in part as modified and vacated in part.

HOLDRIDGE, PJ., concurs.

Filed September 7, 2010 CORRECTION

JUSTICE SCHMIDT, concurring in part and dissenting in part:

I concur in the majority opinion with the exception of the restitution issue.  With all due respect, the majority's analysis is seriously flawed for reasons I will discuss below.

Supreme Court Rule 402 requires that the circuit court give certain admonishments to a defendant before accepting a guilty plea, including "the minimum and maximum sentence prescribed by law."  177 Ill. 2d R. 402(a)(2).  The purpose of Rule 402 admonishments is to ensure that a defendant's guilty plea is intelligently and voluntarily made.  177 Ill. 2d R. 402, Committee Comments.  If the improper admonishments prejudice a defendant or deny her real justice, the appropriate remedy is to vacate her guilty plea and allow her to replead.  People v. Harris, 359 Ill. App. 3d 931, 835 N.E.2d 902 (2005).

---

[1] King may, however, file a civil action against defendant for the damage defendant caused to her vehicle.  See Indesco Products, Inc. v. Novak, 316 Ill. App. 3d 53, 57, 735 N.E.2d 1082, 1086 (2000).

Defendant and the majority rely heavily on People v. Jenkins, 141 Ill. App. 3d 602, 490 N.E.2d 953 (1986), in support of their positions. In Jenkins, the Fourth District held that, generally, the proper remedy for a court's failure to properly admonish a defendant about the possibility of restitution is to vacate the restitution order. Jenkins, 141 Ill. App. 3d 602, 490 N.E.2d 953. The line of cases behind the Jenkins decision treated a court's guilty plea admonitions as implied promises between the court and a defendant. People v. Seyferlich, 398 Ill. App. 3d 989, 924 N.E.2d 1212 (2010). However, since Jenkins was decided, the Fourth District has not repeated the Jenkins holding based on the implied promise theory. Seyferlich, 398 Ill. App. 3d 989, 924 N.E.2d 1212 (recognizing that the Fourth District's decision in Harris called into doubt the continued viability of Jenkins). I would not follow Jenkins but instead turn to the more persuasive approach adopted by the Second District in Seyferlich. But first, the majority opinion.

The majority's train derails when it asserts, "The Jenkins approach has been adopted by our supreme court. The court has held that when a defendant pleads guilty and receives a sentence in excess of the trial court's admonishments, there are two possible remedies: (1) either the promise must be fulfilled, or (2) defendant must be given the opportunity to withdraw his guilty plea. [Citations.] Courts of appeal will modify and reduce a defendant's sentence that does not comport with a trial court's admonishments. See Whitfield, 217 Ill. 2d at 205, 840 N.E.2d at

10

675 (reducing defendant's sentence of imprisonment by three years because the defendant was not admonished regarding the three-year term of mandatory supervised release that would follow his prison sentence); [citations]." Slip op. at 8. The majority analysis here is flawed on several levels.

First of all, the supreme court has neither explicitly nor implicitly adopted the Jenkins approach. One can read Whitfield and find no reference to the Jenkins decision. Likewise, a reading of Whitfield and Morris should make it plain to anyone that Whitfield involved entirely different facts and, therefore, a different issue than that before us and the Jenkins court. In Whitfield, the defendant contended that his constitutional right to due process and fundamental fairness was violated because he pled guilty in exchange for a specific (25 years) sentence, but received a different, more onerous (25 years plus 3 years' MSR) sentence than the one to which he agreed. Relying on the line of reasoning set forth in Santobello v. New York, 404 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495 (1971), the Illinois Supreme Court held that when one pleads guilty in exchange for a specific sentence and the trial judge sentences the defendant to the specific term agreed to in addition to a term of MSR, about which defendant was never admonished, the defendant is denied the benefit of his bargain with the State. In these circumstances, addition of the MSR term to the agreed-upon sentence violates due process because the sentence imposed is more onerous than the one defendant agreed to at the time of the plea hearing. The court concluded that the appropriate

11

remedy was to modify defendant's sentence to a term of 22 years of imprisonment to be followed by the mandatory 3-year term of MSR. Whitfield, 217 Ill. 2d at 205. The key in Whitfield was that defendant pled guilty in exchange for a promise of a specific term of imprisonment. If there is any doubt in one's mind as to the rule in Whitfield, one need only turn to People v. Morris, 236 Ill. 2d 345, 925 N.E.2d 1069 (2010). In Morris, the supreme court was called to determine whether Whitfield created a new rule of criminal procedure. Morris, 236 Ill. 2d at 355. It did. Morris, 236 Ill. 2d at 361. The supreme court stated in Morris, "we declared that a defendant has a due process 'contract' right to enforce the terms of a plea agreement, and the unilateral modification of the agreement to include a term of MSR not previously bargained for amounted to a breach of the plea agreement and violated principles of fundamental fairness." Morris, 236 Ill. 2d at 357. Later in Morris, the court once again paraphrased the rule of Whitfield, acknowledging that Whitfield "marked the first time this court held that a faulty MSR admonishment deprived a defendant of his right to due process by denying him the benefit of his bargain with the State." Morris, 236 Ill. 2d at 361. The Whitfield rule applies to circumstances where a defendant pleads guilty in exchange for a specific sentence. Such was not the case here. Whitfield and Morris are inapposite. Whitfield even distinguished itself from cases where a defendant's guilty plea is not in exchange for a specific sentence and, therefore, the faulty admonitions did not deny defendant the benefit of some bargain he

12

made with the State. The court uses People v. McCoy, 74 Ill. 2d 398 (1979), as an example. Whitfield, 217 Ill. 2d at 191.

It is apparent from the majority's language that it has made the leap in logic to equate a trial court's admonishment with a promise from the State. The majority writes, "The court has held that when a defendant pleads guilty and receives a sentence in excess of the trial court's admonishments, there are two possible remedies: (1) either the promise must be fulfilled, or (2) defendant must be given the opportunity to withdraw his guilty plea." (Emphasis added.) Slip op. at 8. In the case before us, one should reasonably ask: What promise? Since the majority does not refer to what promise must be fulfilled, it must be referring to the trial court's admonishments. When the supreme court in Whitfield and Morris referred to the promise, it was clearly referring to the promise between defendant and the State for a specific sentence in exchange for a guilty plea. In the case before us, defendant agreed to enter an open plea of guilty in exchange for the State dropping some additional charges. The State dropped the additional charges. Defendant does not argue that she was denied the benefit of a bargain with the State, only that she was not admonished about restitution. The majority makes an argument for defendant that defendant has not made. This is simply not a Whitfield case. That being said, let us return to the Second District's recent opinion in Seyferlich.

As the Seyferlich court noted, the court's role is not to bargain with the defendant to secure a guilty plea: "[t]he

13

objective of ensuring that guilty pleas are entered voluntarily and intelligently is not advanced by a rule that affords defendants a sentencing windfall by treating misstatements by the trial court as promises. If defendant would not have pleaded guilty but for the incomplete admonition, her remedy was to seek leave to withdraw her plea." Seyferlich, 398 Ill. App. 3d 989, 992, 924 N.E.2d 1212, 1215 (2010). Seyferlich relied heavily upon the Fourth District post-Jenkins decision in People v. Harris, 359 Ill. App. 3d 931, 835 N.E.2d 902.

Like the defendant in Harris, defendant in this case asks for the incorrect remedy--she does not ask this court to vacate her guilty plea and allow her to replead. See Harris, 359 Ill. App. 3d 931, 835 N.E.2d 902.

Additionally, there is no indication that defendant was denied real justice or was prejudiced by the circuit court's failure to inform her of the possibility of restitution. Defendant agreed to plead guilty to intimidation and criminal damage to property in exchange for the State's promise to drop the armed violence charge and two attempted first degree murder charges. There was no agreement on sentencing; in fact, it was understood that all sentencing options were open to the court. The remedy fashioned by the majority here is wrong on yet another level. It defeats the legislative purpose of trying to make victims whole. The majority seems satisfied to add a footnote telling the victim to sue the defendant in civil court. Slip op. at 9 n.1. No doubt the victim is grateful for this legal advice (assuming she reads appellate

14

opinions). The legislature created restitution awards as another remedy for crime victims and we ought not be quick to defeat that remedy.

For reasons set forth above, I dissent from the decision to vacate the restitution order.